1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT

9
SOUTHERN DISTRICT OF CALIFORNIA

10

11
**VICENTE ARRAIGA ALVAREZ,**

Case No.: 16-CV-1302-CAB-NLS

12
Plaintiff,

**REPORT AND**
**RECOMMENDATION FOR**

13
**v.**

**ORDER DENYING**
**DEFENDANTS' MOTION TO**

14
**DISMISS**

15
**DR. S. KO, M.D., et al.,**

(Dkt. No. 24)

16
Defendants.

17

18

19
Before the Court is Defendants Dr. S. Ko's, Dr. Connall McCabe's, Dr. A.

20
Sangha's and Deputy Director J. Lewis' (collectively, "Defendants") motion to

21
dismiss Plaintiff Vicente Alvarez's Complaint under Federal Rule of Civil

22
Procedure 12(b)(6).  (Dkt. No. 24.)  Plaintiff filed an opposition, and Defendants

23
filed a reply. [1]  (Dkt. Nos. 29, 32.)  This matter was referred to the undersigned for a

24
report and recommendation under Local Civil Rule 72.3.f and 28 U.S.C. §

25

26
[1] Plaintiff's opposition brief is thirty-eight pages long.  (Dkt. No. 29.)  The
Court notifies Plaintiff that for future filings, Local Civil Rule 7.1.h. requires that
"[b]riefs or memoranda in support of or in opposition to all motions noticed …

27
must not exceed a total of twenty-five (25) pages in light, per party" and [n]o reply
memorandum will exceed ten (10) pages without leave of the judge."

28

1

636(b)(1)(B).  For the reasons explained below, the Court **RECOMMENDS** that Defendants' motion be **DENIED**.

### I.   Factual Allegations[2]

#### a.   Plaintiff Complains of Chest Pains, and Requests To See A Doctor

Plaintiff alleges that sometime before October 24, 2014, and while housed at Corcoran State Prison, he submitted a medical slip to request medical assistance but the slip was ignored.  (Id. at ¶ 12.)  On October 24, 2014, Plaintiff submitted a second medical slip.  On approximately October 25, 2014, Plaintiff saw and told a nurse he had been suffering from chest pains for a long time.  The nurse refused to refer him to a doctor and gave him ibuprofen for pain.  (Id. at ¶ 13.)  About eight days later, on November 2, 2014, Plaintiff submitted an Emergency CDC 602 Health Care Appeal, Log #: COR HC 14057207 (hereafter "Log # 207").  (Id. at 65.)

#### b.   Plaintiff is Transferred to Centinela, and Sees a Nurse

On November 18, 2014, Plaintiff transferred from Corcoran to Centinela State Prison.  He told medical staff about his chest pains and requested to see a doctor.  (Id. at ¶ 16.)  About a month later, on December 17, 2014, Plaintiff saw a nurse and told the nurse his chest was in pain.  The nurse conducted an echocardiogram ("EKG"), which "revealed an abnormal low heart rate."  (Id. at ¶¶ 18-19.)

#### c.   Corcoran Staff Review and Deny Plaintiff's 602 Appeal and His Request To See A Doctor  (First Level)

On December 18, 2014, S. Russell, a Health Care Appeals Coordinator, interviewed Plaintiff over the phone about the 602 Appeal, Log # 207, that Plaintiff previously submitted at Corcoran.  Plaintiff told Russell about his continued chest

---

[2] The following factual allegations are taken from Plaintiff's Complaint. (Dkt. No. 1.)

1  pains, that he had not yet seen a doctor despite his requests, and asked to see a heart
2  specialist. (Id. at ¶ 21.) Russell told Plaintiff that because he is no longer at
3  Corcoran, they cannot prescribe medication or treatment. (Id. at ¶ 22.) On
4  December 22, 2014, Dr. McCabe signed Plaintiff's 602 Appeal denial at the first
5  level.

6      On January 6, 2015, Plaintiff submitted his 602 Appeal for the next level of
7  review. He argued his request to see a heart specialist should have been granted
8  because his chest pains demonstrate a significant illness. (Id. at ¶ 24.) He stated
9  his pains may cause a severe limitation of his abilities to perform daily activities or
10 may cause premature death. (Id. at ¶ 25.)

### d. Plaintiff Suffers Severe Chest Pains, Is Taken to An Emergency Room, and Sees a Doctor

13     On January 22, 2015, about three months from the date Plaintiff initially
14 complained of chest pains and asked to see a doctor, Plaintiff suffered severe chest
15 pains and went to the emergency room. Plaintiff saw Dr. S. Ko, and told him about
16 his "excruciating chest problems" that had been ongoing, and that at times the pain
17 was so unbearable he had to sit down. (Id. at ¶ 28.) Dr. Ko gave him a "verbal
18 examination" but did not order an X-ray or diagnostic testing.[3] Dr. Ko diagnosed
19 Plaintiff with "musculoskeletal problems" and told him to take a break from
20 working out too much. (Id.) Plaintiff responded that working out could not be
21 causing his pain because the pain is preventing him from working out. (Id.)
22 Plaintiff asked for an X-ray or to see a heart specialist for further examination. (Id.
23 at ¶ 31.) Dr. Ko told him no, and that he would prescribe Naproxen for the chest
24 pain, and that if Plaintiff had an issue with his decision then he could file a 602
25 Appeal.[4] (Id. ¶ 33.)

26
27     [3] An exhibit to Plaintiff's Complaint indicates that on January 22, 2015, "[t]he doctor ordered an EKG …." (Dkt. No. 1 at 57.)
28     [4] On February 3, 2015, Plaintiff filed another 602 Appeal about Dr. Ko's
                                                                    (continued…)

3

1
2
3

**e.      Dr. Ko Interviews Plaintiff About His 602 Appeal, Log #**
**207; and Drs. Sangha and Reilly Review and Deny His**
**Appeal (<u>Second Level</u>)**

4
5
6
7
8
9
10

On February 4, 2015, Dr. Ko interviewed Plaintiff about his 602 Appeal, Log #207, at the second level of review. (Id. ¶ 35.)  Plaintiff told Dr. Ko the Naproxen was not working, that a nurse previously told him his EKG showed an abnormal heart rate and that it was a sign his heart was not properly working, and Plaintiff again asked to see a heart specialist. (Id. ¶¶ 36, 37.)  Dr. Ko responded with a hostile attitude that nothing was wrong with his heart, that the nurse did not know what he was doing, and that Plaintiff should rest and stop working out. (Id., ¶ 38.)

11
12
13
14
15
16
17

Plaintiff asked if he needed to actually fall out from a heart attack to be referred to a heart specialist, and Dr. Ko nodded his head up and down to respond "yes." (Id., ¶ 40.)  Dr. Ko then told Plaintiff if he was not happy with the care he received, then he could seek medical care at his own expense, which would cost thousands of dollars. (Id. ¶ 41.)  Plaintiff asserts he believes Dr. Ko deprived him of adequate care because he was financially motivated not to refer him to a specialist. (Id. ¶ 43.)

18
19
20
21
22
23
24

On February 21, 2015, Drs. Sangha and Reilly partially granted and partially denied Plaintiff's appeal at the second level.  The appeal was partially granted on grounds that when Plaintiff initially arrived at Centinela he received an EKG study. (Dkt. No. 1 at 57.)  The appeal was denied to the extent Plaintiff requested to see a cardiologist or get a CT scan. (Id.)  On March 3, 2015, Plaintiff resubmitted his 602 Appeal for the third level of review. (Id., ¶ 44.)

25
26
27
28

---

(…continued)
alleged inadequate care. (Id. at ¶ 34, referencing Log # CEN HC 1507230; *see also* Dkt. No. 1 at 72.)  On or about May 4, 2015, Plaintiff was informed this additional appeal was denied and cancelled because it was duplicative of his previous 602 Appeal to see a heart specialist. (Id. ¶ 45.)

1
2

### f.   Plaintiff Sees Dr. Ko In the Ad-Seg Clinic, And Again Requests to be Referred to a Heart Specialist

3
4
5
6
7
8
9
10
11

On May 5, 2015, Plaintiff went to Ad-Seg Clinic to see a doctor for his chest pains; the Naproxen was not relieving his pain and instead gave him stomach cramps and sharp pain on his right side.  (Id., ¶¶ 46-47.)  Plaintiff saw Dr. Ko, and again asked to be referred to a heart specialist.  Dr. Ko ignored Plaintiff's complaint and told him he could prescribe Tylenols to ease the stomach pain.  (Id., ¶ 49.)  Plaintiff finally warned Dr. Ko that he would pursue a civil rights complaint for deliberate indifference to his medical needs because a reasonable doctor would not treat him this way.  (Id., ¶ 47.)  Dr. Ko sarcastically responded that he would look forward to that day in court.[5]  (Id., ¶ 48.)

12
13

### g.   Deputy Director J. Lewis Reviews And Denies Plaintiff's 602 Appeal, Log #207 (Third Level)

14
15
16
17

On June 1, 2015, Deputy Director Lewis denied Plaintiff's 602 Appeal, Log # 207.  Plaintiff alleges Director Lewis denied the appeal despite knowing that Plaintiff was in pain and suffering, and despite knowing about Dr. Ko's deliberate indifference to his serious medical need.  (Id. ¶¶ 58-59.)

18
19
20
21
22
23
24
25
26
27
28

---

[5]    Also on May 5, 2015, Plaintiff filed another 602 Appeal, Log # CEN HC 15027248, to again request to be seen by another doctor or heart specialist, and to complain about Dr. Ko's alleged deliberate indifference to his medical needs.  (Id. ¶ 51; id. at 69.)  Approximately four days later, Plaintiff received an X-ray; the results were unremarkable.  Plaintiff believes Dr. Ko ordered the X-ray in response to Plaintiff's warning that he would file a civil rights complaint.  (Id. ¶ 52.)  Plaintiff also believes that because his X-ray did not show skeletal abnormalities, and because the Tylenol did not take his chest pain away, his chest pains are not musculoskeletal.  (Id., ¶ 53.)  On May 26, 2015, Dr. Ko interviewed Plaintiff about this 602 Appeal and his request to see another doctor or heart specialist.  (Id. ¶ 56.)  Plaintiff asserts Defendant Dr. Sangha referred the appeal interview to Dr. Ko despite Plaintiff's allegations that Dr. Ko was deliberately indifferent to his medical needs.  (Id. ¶ 55.)  Plaintiff does not allege appeal Log # CEN HC 15027248 progressed beyond the first level.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### h.    Plaintiff Goes to the Hospital Again

In late June or early July of 2015, Plaintiff suffered "excruciating chest pains" and went again to the hospital via ambulance.  (Id. ¶ 61.)  The hospital's doctor took blood work and did an X-ray, but the results were unremarkable.  (Id. ¶ 63.)  The doctor told Plaintiff that any further testing would need to be ordered by the doctors at the prison or they would need to refer Plaintiff to a cardiologist.  (Id. ¶ 64.)

### i.    Plaintiff Files His Civil Rights Complaint

On May 31, 2016, Plaintiff filed a Complaint against Defendants.  Plaintiff alleges Eighth Amendment claims for deliberate indifference to his serious medical needs. (Dkt. No. 1 at 17-22.)  Plaintiff alleges he still has not been seen by a cardiologist or referred for further diagnostic testing.  He alleges he continues to suffer from chest pains and pain to his right-side, and that he continues to suffer from pain throughout the day.  (Id., ¶¶ 66-70.)  He alleges he is in serious mental anguish and anxiety from fear of having a heart attack, and that it affects his ability to sleep and regularly exercise.  (Id. ¶¶ 65-73, 87.)

Plaintiff seeks monetary damages and injunctive relief.  He asks the Court to issue an order requiring Defendants to stop their ineffective course of treatment, and to order diagnostic tests for cardiac disease or refer him to a heart specialist. (Id., ¶ 97.)

## II.  Legal Standard

To determine whether a complaint states a claim, the court takes "all allegations of material fact" as true and construes them in the light most favorable to the plaintiff. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

1   the reasonable inference that the defendant is liable for the misconduct alleged."

2   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

3   *Twombly*, 550 U.S. 544 (2007)).  In determining a motion to dismiss for failure to

4   state a claim, the court may consider materials properly submitted as part of the

5   complaint, and "document[s] the authenticity of which [are] not contested, and

6   upon which the plaintiff's complaint necessarily relies," even if they are not

7   attached to the complaint.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998),

8   superseded by statute on other grounds as recognized in *Abrego v. The Dow Chem.*

9   *Co.*, 443 F.3d 676 (9th Cir. 2006).

10      **III.   Discussion**

11      Defendants move to dismiss Plaintiff's Complaint on grounds that (1) it fails

12   to state a claim against Dr. Ko because a difference of opinion between an inmate-

13   patient and a medical provider is not actionable; and (2) it fails to state a claim

14   against the rest of the defendants because they only reviewed Plaintiff's inmate

15   appeal, which is not actionable.  (Dkt. No. 24 at 2.)

16          **a.      The Eighth Amendment**

17      The Eighth Amendment protects prisoners from "inhumane conditions of

18   confinement."  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).

19   Consequently, the government must "provide medical care for those whom it is

20   punishing by incarceration," and cannot act with deliberate indifference to a

21   prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A

22   prison official acts with deliberate indifference if the official "knows of and

23   disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511

24   U.S. 825, 837 (1994).  Deliberate indifference is also known as the "unnecessary

25   and wanton infliction of pain."  *Estelle*, 429 U.S. at 104 (internal quotations

26   omitted).  To prevail, a plaintiff must make (1) an objective showing that he had a

27   serious medical need; and (2) a subjective showing that the specific defendants

28

7

1
2

were deliberately indifferent to that need.  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

3

### b.     Plaintiff's Claim Against Dr. Ko

4
5
6
7
8
9
10
11

Plaintiff alleges Dr. Ko used an ineffective course of treatment – Naproxens and Tylenols – to supposedly treat Plaintiff's serious medical need despite knowing about Plaintiff's pain and permanent injury risks.  (Id., ¶ 81.)  He alleges Dr. Ko failed to order diagnostic testing for cardiac disease.  (Id., ¶ 84.)  He alleges Dr. Ko's demand that Plaintiff would have to "fall out of a heart attack" to be referred to a heart specialist violated Plaintiff's Eighth Amendment rights.  (Id. ¶ 85.)  He asserts Dr. Ko's refusal to refer him to a heart specialist violated his Eighth Amendment rights.  (Id. ¶¶ 76, 95.)

12
13
14
15

Defendants move to dismiss Plaintiff's claim against Dr. Ko on grounds that Plaintiff's claim amounts to a difference of opinion between the physician and the patient-inmate.  They argue this does not constitute deliberate indifference.  (Dkt. No. 24-1 at 5.)

16
17
18
19
20
21
22
23
24

A mere difference of opinion between a patient-inmate and a physician about the appropriate treatment is insufficient to give rise to an Eighth Amendment claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir 2004), citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).  Even a showing of medical malpractice or gross negligence is insufficient to establish a constitutional violation.  *Toguchi*, 391 F.3d at 1060.  Rather, the plaintiff must show that the chosen course of treatment "'was medically unacceptable under the circumstances' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.*, quoting *Jackson*, 90 F.3d at 332.

25
26
27
28

However, a prison official demonstrates deliberate indifference when he or she knows a course of treatment is ineffective but continues it anyway or delays necessary treatment without justification.  *See Jett v. Penner*, 439 F.3d 1091, 1097-

98 (9th Cir. 2006).  Deliberateness may be inferred where a prison official is aware of the extent of the patient-inmate's pain, but does not do anything to improve the situation.  *Id.* at 1098.

Here, Plaintiff's allegations state a claim of deliberate indifference against Dr. Ko.  Plaintiff alleges severe continuing chest pains that affect his daily activities, which is sufficient to allege a serious medical need.  *Jett*, 439 F.3d at 1096 (a "serious medical need" may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'").

Some, but not all, of Plaintiff's allegations demonstrate a mere difference of opinion.  *See e.g.,* Dkt. No. 1, ¶ 31 (Plaintiff's opinion that he should be referred to cardiologist or for further diagnostic testing, versus Dr. Ko's opinion that Plaintiff has a musculoskeletal condition that could be treated with Naproxen and with Tylenol for side effects); *Estelle*, 429 at 107 ("the question whether an X-ray - or additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice").  If these types of allegations were all that Plaintiff alleged, his allegations would not state a claim.  But Plaintiff does more than that.

Plaintiff alleges he informed Dr. Ko that the treatment plan – to rest and not work out as much, and to take Naproxen – was ineffective and that he continues to have chest pains.  (Dkt. No. 1, ¶¶ 36-37.)  Plaintiff further alleges that Dr. Ko nodded "yes" when Plaintiff finally asked if he would first need to fall out from a heart attack to be referred to a cardiologist.  (Id., ¶ 40.)  If true, Plaintiff's facts could demonstrate Dr. Ko knew the treatment plan he placed Plaintiff on was ineffective and continued on that treatment plan anyway, and deliberately did not take steps to improve the situation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff further alleges the delay in treatment has caused him harm.  *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1991) (any delay in providing an appropriate course of treatment does not by itself show deliberate indifference, unless the delay is alleged to have caused harm).  Here, Plaintiff alleges that to the present, he still currently suffers from chest pain, and from added pain to his right side.  He alleges the pain sometimes feels as if someone hit him with a bat in the chest, and at other times as if someone is standing on his chest, and at other times, the pain feels as if someone is stabbing him with a dull knife. (Dkt. No. 1, ¶¶ 66-70.)

Defendants' arguments to the contrary are unpersuasive.  Defendants point to an exhibit attached to Plaintiff's Complaint that a doctor ordered an EKG on January 22, 2015.  (Dkt. No. 1 at 57.)  The exhibit, however, does not specify which doctor ordered the EKG, i.e., whether it Dr. Ko or was some other doctor on staff that day.  Regardless, Plaintiff alleges that Dr. Ko gave him a verbal examination and did not order any diagnostic testing.  Moreover, Defendants' argument does not address Plaintiff's allegations that he told Dr. Ko the treatment plan was not working and that Dr. Ko did nothing in response.  At this preliminary stage, and viewing the allegations in the light most favorable to Plaintiff, they suffice to state a claim.

Defendants also argue Plaintiff's complaints of pain during the 602 Appeal interview do not count because he complained during the interview and not a scheduled medical appointment.  Defendants, however, do not provide any authority to support that a patient-inmate's complaints during a 602 Appeal interview should not be considered when determining whether the physician knew the treatment plan was ineffective.  Defendants also argue Plaintiff fails to state a claim because Plaintiff's 602 Appeal was partially granted because an EKG was

previously taken.  That argument, however, is also a non-starter because it does not dispense with Plaintiff's continued reports of chest pains despite the treatment plan.

For these reasons, the Court concludes Plaintiff's Complaint states an Eighth Amendment claim for deliberate indifference to medical needs against Dr. Ko.  The Court therefore recommends Defendants' motion to dismiss the claim against Dr. Ko be denied.

**c.      Plaintiff's Claims Against Dr. McCabe, Dr. Sangha, and Deputy Director Lewis**

Defendants McCabe, Sangha and Lewis move to dismiss the claims against them on grounds they only reviewed and denied Plaintiff's 602 Appeals and his requests for a referral to a cardiologist.  (Dkt. No. 24-1 at 8.)  Plaintiff argues that contrary to Defendants' representations, Plaintiff did not base his claims on Defendants' denial of his 602 Appeals.  (Dkt. No. 29 at 26, 28.)  Defendants reply the Complaint lacks any allegations that Defendants McCabe, Sangha and Lewis were involved in Plaintiff's care.  (Dkt. No. 32 at 4.)  The Court analyzes the allegations against each of these defendants below.

**d.      Dr. McCabe**

Plaintiff alleges Dr. McCabe is responsible for Corcoran inmates' medical care.  (Dkt. No. 1, ¶ 7.)  He alleges Dr. McCabe has authority and is responsible for deciding whether to order and approve tests and treatments for inmates, and to ensure inmates who are transferred to other institutions continue receiving proper medical care.  (Id.)  Plaintiff alleges Dr. McCabe denied his 602 appeal and his request to be referred to a heart specialist at the first level of review.  (Id., ¶ 23.)  He also alleges Dr. McCabe violated his Eighth Amendment rights by failing to make sure Plaintiff received adequate medical care when he transferred to Centinela.  (Id. ¶ 82.)

11

An action based on a prison official's review of an inmate's administrative appeal generally cannot serve as the basis for liability under section 1983 because "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing appeals because no entitlement to a specific grievance procedure), *citing Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). However, prison administrators cannot willfully ignore constitutional violations being committed by subordinates. *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011). Thus, circumstances may exist where individuals involved in reviewing an inmate appeal can be held liable under section 1983. For example, "an individual who denies an inmate appeal and who had the authority and opportunity to prevent an ongoing constitutional violation could potentially be subject to liability if the individual knew about an existing or impending violation and failed to prevent it." *Grant v. Cate,* 2016 U.S. Dist. LEXIS 169440, *22 (E.D. Cal. Dec. 6, 2016), citing *Jett,* 439 F.3d at 1098.

Here, liberally construing the Complaint, Plaintiff states a cognizable Eighth Amendment claim against Dr. McCabe. Contrary to Defendants' arguments, Plaintiff does not merely allege Dr. McCabe denied his administrative appeal. Rather, Plaintiff alleges Dr. McCabe knew about his continued chest pains and requests to see a heart specialist, had authority to prevent a constitutional violation, and yet denied his request and delayed treatment for medical care that Plaintiff alleges was sorely needed. (Dkt. No. 1, ¶¶ 7, 76, 82.) Plaintiff further alleges the delay in treatment has caused him harm. *See supra*, p. 10. Accordingly, the Court recommends denying Defendants' motion to dismiss the claims against Dr. McCabe.

/

/

### e.      Dr. Sangha

Plaintiff alleges Dr. Sangha is responsible for Centinela inmates' medical care, and is responsible for supervising, directing, and training the medical staff at Centinela, including Dr. Ko.  (Dkt. No. 1 ¶ 8.)  Plaintiff alleges Dr. Sangha referred Plaintiff's 602 Appeal (Log #248) to Dr. Ko for the interview at the first level of review despite Plaintiff's request to see another doctor and his allegations of deliberate indifference against Dr. Ko.  (Id., ¶ 55.)  An exhibit to Plaintiff's Complaint indicates Dr. Sangha signed off on Plaintiff's 602 Appeal denial (Log #248).  (Id. at 69-70.)  Plaintiff alleges Dr. Sangha condoned Dr. Ko's improper actions.  (Id., ¶¶ 77, 79.)  For the reasons that follow, the Court concludes Plaintiff's allegations suffice to state a claim against Dr. Sangha.

As previously noted, reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability under a § 1983 action.  *See Ramirez*, 334 F.3d at 860.  However, a plaintiff "may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge and acquiescence in unconstitutional conduct by his or her subordinates."  *Starr*, 652 F.3d at 1207.  Knowledge and acquiescence may be shown where the supervisor reviewed the inmate appeal and had the ability but failed to take corrective action.  A defendant may be held liable as a supervisor under § 1983 for "(1) his or her personal involvement in the constitutional deprivation, or (2) if a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Id.,* quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  "The requisite causal connection can be established . . . by setting in motion a series of acts by others," or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury."  *Starr,* 652 F.3d at 1207-08, quoting *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, Plaintiff does not merely allege Dr. Sangha reviewed and denied his 602 Appeal. Rather, he alleges facts stating a claim for deliberate indifference based on Dr. Sangha's alleged knowledge and acquiescence in unconstitutional conduct. Liberally construing Plaintiff's allegations, he alleges that Dr. Sangha knew Dr. Ko refused to provide effective treatment and refused to refer him to a specialist, and yet did not take actions to rectify the situation or to stop his subordinate's acts. (Id., ¶¶ 55, 77, 79.) Plaintiff further alleges Dr. Sangha referred a 602 Appeal interview to Dr. Ko for handling despite knowing Plaintiff complained of Dr. Ko's treatment. (Id., ¶ 55.) Taken together, Plaintiff's allegations consist of a claim that Dr. Sangha may be culpable for his own action or inaction as to the alleged constitutional deprivation. Plaintiff further alleges the delay in treatment has caused him harm. *See supra*, p. 10. Accordingly, the Court recommends denying Defendants' motion to dismiss Plaintiff's complaint against Dr. Sangha.

### f. Deputy Director Lewis

Plaintiff alleges Deputy Director Lewis was responsible for the overall operation of the California Department of Corrections Health Care Department, including Centinela. (Dkt. No. 1, ¶ 9.) Deputy Director Lewis denied Plaintiff's 602 Appeal at the third director's level of review. (Id., ¶ 58.) He alleges Deputy Direct Lewis "condoned [his] subordinate" Dr. Ko's actions of directing Plaintiff to seek medical care at his own expense and denying him medical care because it was too expensive. (Id. ¶ 77.) Plaintiff alleges Director Lewis failed to take steps to ensure Plaintiff received adequate medical care from his subordinates, despite knowing about Plaintiff's alleged pain, suffering and permanent injury risks. (Id., ¶ 80.)

For similar reasons as stated in the section above (*see supra*, § III.e), the Court also concludes Plaintiff's allegations suffice to state a claim against Deputy Director Lewis. Plaintiff does not merely allege Deputy Director Lewis reviewed

14

and denied his 602 Appeal.  Liberally construing the allegations, Plaintiff alleges that Deputy Director Lewis knew Dr. Ko refused to provide effective treatment for Plaintiff's continued chest pains and refused to refer him to a specialist.  (Id., ¶¶ 77, 80.)  He alleges Deputy Director Lewis nonetheless denied his 602 Appeal.  (Id., ¶ 58.)  Plaintiff further alleges the delay in treatment has caused him harm.  *See supra*, p. 10.  Accordingly, the Court recommends denying Defendants' motion to dismiss the claim against Deputy Director Lewis.

## IV.  Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiffs' Complaint be **DENIED**.  This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **April 7, 2017**, any party to this action may file written objections and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed and served on all parties no later than **April 21, 2017**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  March 24, 2017

Hon. Nita L. Stormes
United States Magistrate Judge